UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MEGHAN M.,

                 Plaintiff,
      v.

MARTIN O'MALLEY,[1] Commissioner of
  Social Security,

                 Defendant.
_____

**DECISION
and
ORDER**

21-CV-908F
(**consent**)

APPEARANCES:        LAW OFFICES OF KENNETH HILLER
                            Attorneys for Plaintiff
                            KENNETH R. HILLER and
                            ELIZABETH ANN HAUNGS, of Counsel
                            6000 North Bailey Avenue
                            Suite 1A
                            Amherst, New York  14226

                            TRINI E. ROSS
                            UNITED STATES ATTORNEY
                            Attorney for Defendant
                            Federal Centre
                            138 Delaware Avenue
                            Buffalo, New York  14202
                                     and
                            VERNON NORWOOD
                            Special Assistant United States Attorney, of Counsel
                            Social Security Administration
                            Office of General Counsel
                            6401 Security Boulevard
                            Baltimore, Maryland  21235

---

[1] Martin O'Malley became the Acting Commissioner of the Social Security Administration on December 20, 2023, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

**JURISDICTION**

On November 16, 2023, the parties to this action consented pursuant to 28 U.S.C. § 636(c) to proceed before the undersigned in accordance with this court's June 29, 2018 Standing Order (Dkt. 15). The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on August 16, 2022 (Dkt. 12), and by Defendant on January 12, 2023 (Dkt. 13).

**BACKGROUND**

Plaintiff Meghan M. ("Plaintiff"), brings this action under Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's applications ("applications") filed with the Social Security Administration ("SSA") on August 15, 2014, for Social Security Disability Income under Title II of the Act ("SSDI"), and for Supplemental Security Income under Title XVI of the Act ("SSI") (together, "disability benefits"). Plaintiff alleges she became disabled on October 29, 2013, based on a seizure disorder, Tietze syndrome (musculoskeletal disease involving the swelling of cartilage around the joints connecting the breastbone to the upper ribs), anxiety and Vitamin B12 deficiency. AR[2] at 20, 156, 406, 446, 449. Plaintiff's applications initially were denied on October 6, 2014. AR at 139-52.

On October 8, 2014, Plaintiff timely filed a request for an administrative hearing, AR at 196-97, and on February 13, 2017,[3] an initial hearing was held in Buffalo, New

---

[2] References to "AR" are to the Bates-stamped pages of the Administrative Record electronically filed in two parts by Defendant on February 4, 2022 (Dkts. 6 and 7).
[3] It is not clear from the record why the administrative hearing Plaintiff requested on October 8, 2014, was not held until February 13, 2017.

2

York, before Administrative Law Judge ("ALJ") William Weir ("ALJ Weir"), but without the presence of Plaintiff who was then hospitalized.  AR at 116-36, 258-60.  The ALJ did not then render a decision but continued the first administrative hearing to July 10, 2017, when Plaintiff, represented by Kelly Laga Sciandra, Esq., appeared and gave testimony ("first administrative hearing").  AR at 86-115.

On September 15, 2017, the ALJ issued a decision denying Plaintiff's claims, AR at 153-72 ("ALJ's First Decision"), which Plaintiff timely appealed to the Appeals Council.  AR at 277-280.  On February 12, 2019, the Appeals Council vacated the ALJ's First Decision and remanded the matter to the ALJ to consider evidence obtained by the ALJ after the first administrative hearing, specifically, records from Dent Neurological Institute including a treating source assessment to which the ALJ gave "great weight," but which was never proffered to Plaintiff's representative with an opportunity to request a supplemental hearing as required.  AR at 173-77.

On December 4, 2019, a second administrative hearing was held in Buffalo before Judge Weir at which Plaintiff, then represented by Phillip Urban, Esq., appeared and testified, and testimony was also given by vocational expert Michele Erbacher ("the VE") ("second administrative hearing").  AR at 47-85.  On January 13, 2020, the ALJ requested the VE complete several interrogatories so as to provide a professional opinion regarding Plaintiff's disability claims, AR at 518-23, which the VE completed on January 17, 2020 ("the VE's responses").  On January 23, 2020, the ALJ advised Urban of the VE's responses and invited Urban to submit further records or written statements, advising a supplemental hearing on Plaintiff's behalf also could be requested.  AR at 529-30.  On January 31, 2020, Urban requested a supplemental hearing to take

testimony of the VE and Plaintiff.  AR at 532.  On October 6, 2020, Alexaner Kyler, Esq. ("Kyler"), of counsel with the same law firm as Urban, advised the ALJ of additional medical records to be submitted regarding Plaintiff's claims.  AR at 533.

On October 13, 2020, a supplemental hearing was held via teleconference before the ALJ, at which both Plaintiff and the VE appeared and testified ("supplemental administrative hearing").[4]  AR at 40.  On October 27, 2020, the ALJ issued a decision denying Plaintiff's claims, AR at 17-39 ("ALJ's Second Decision"), for which Plaintiff, on November 30, 2020, requested review by the Appeals Council.  AR at 400-03.  On June 28, 2021, the Appeals Council denied Plaintiff's request for review, AR at 1-6, thus rendering the ALJ's Second Decision the Commissioner's final decision.  On August 11,

---

[4] No transcript for the supplemental administrative hearing is in the record nor does either party cite to the transcript.  As relevant here, the SSA's Hearings, Appeals, and Litigation Law Manual ("HALLEX") guidelines place the onus on the SSA's court records assistant ("CRA") to ensure the administrative hearing transcript is accurate, and complete, and included in the administrative record.  SSA HALLEX I-4 – I-53 (1993 WL 643630).  "[I]nternal agency documents, such as HALLEX, do not [ ] carry the force of law and are not binding on the SSA . . . .  Therefore, they do not create judicially enforceable duties, and we will not review allegations of noncompliance with their provisions."  *Jones-Reid v. Astrue*, 934 F.Supp.2d 381, 407-08 (D.Conn. 2012), *aff'd*, 515 Fed.Appx. 32 (2d Cir. 2013).  Significantly, the Second Circuit acknowledges that where portions of the transcript of an administrative hearing are missing or inaudible, it is only necessary to remand the matter for further development of the record where the unavailable portions of the administrative hearing transcript "prevent a fair review" of the claims in light of some indication that the missing portions would "bolster" the party's argument.  *Williams v. Barnhart*, 289 F.3d 556 (2d Cir. 2002).  In the instant case, not only has neither party remarked about the missing transcript, but the ALJ asserts that the matter was remanded from the Appeals Council "solely because medical evidence appearing in the [administrative] record as Exhibit 32F had not been proffered to the claimant before the September 20, 2017 decision was issued."  AR at 20.  Exhibit 32F, however, was in the record prior to the second administrative hearing on December 4, 2019.  AR at 52.  A plain review of Exhibit 32F establishes it mostly contains records found elsewhere in the administrative record, more specifically, duplicates of Plaintiff's treatment records from Dent for the period March 18, 2013 to October 14, 2016.  The undersigned finds this situation closely analogous to an incomplete hearing transcript where it is possible to construe the missing portions from the context of those portions of the hearing transcript that are in the administrative record  Accordingly, the matter will not be remanded to allow either the missing hearing transcript to be added to the administrative record, or for yet a further hearing to recreate the missing transcript for an administrative hearing that was limited to a document that is largely duplicative of other documents in the administrative record such that it is doubtful any prejudice will result from the court's consideration of this action without the missing supplemental administrative hearing transcript.

2021, Plaintiff commenced the instant action seeking review of the ALJ's Second Decision denying Plaintiff disability benefits.

On August 16, 2022, Plaintiff moved for judgment on the pleadings (Dkt. 12 ("Plaintiff's Motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. 12-1) ("Plaintiff's Memorandum").  On January 12, 2023, Defendant moved for judgment on the pleadings (Dkt. 13) ("Defendant's Motion"), attaching the Commissioner's Brief in Support of the Commissioner's Motion for Judgment on the Pleadings and in Response to Plaintiff's Brief Pursuant to Local Rule 5.5 (Dkt. 13-1) ("Defendant's Memorandum").  Filed on February 22, 2023, was Plaintiff's Notice of No Reply (Dkt. 14), advising Plaintiff elected not to file any reply.  Oral argument was deemed unnecessary.

Based on the following, Plaintiff's Motion is DENIED; Defendant's Motion is GRANTED.

## FACTS[5]

Plaintiff Meghan M. ("Plaintiff"), born August 21, 1985, was 28 years old as of her alleged disability onset date ("DOD") of October 29, 2013, and 35 years old as of October 30, 2020, the date of the ALJ's Second Decision.  AR at 20, 31, 141.  As of the second administrative hearing, Plaintiff lived in her mother's house with her mother, Plaintiff's then ten-year old daughter, and Plaintiff's adult brother.  AR at 64-65, 592. Plaintiff attended regular classes in school, graduated high school, and attended college where she completed two associate degrees including business and paralegal.  AR at

---

[5] In the interest of judicial economy, recitation of the Facts is limited to only those necessary for determining the pending motions for judgment on the pleadings.

5

91, 1303.  Plaintiff's past relevant work ("PRW") includes as a collections clerk, cashier, and paralegal, AR at 525, but she has not worked since October 29, 2013 because of a seizure disorder.  Although Plaintiff has a driver's license, she was without her license for three to four years because of her seizure disorder, although by the second administrative hearing, her driving restriction had been lifted.  AR at 79-80, 539.

On February 13, 2011, Plaintiff was in an automobile accident following which she was treated by neurologist Marc Frost, M.D. ("Dr. Frost"), at Dent Neurologic Institute ("Dent"), for a concussion without coma, whiplash syndrome, and nausea, for which her symptoms had largely resolved by February 24, 2011, AR at 608-15, although Plaintiff continued to be followed by Valerie Vullo, M.D. ("Dr. Vullo"), a pain management specialist.  *Id*. at 616.  Plaintiff first experienced seizures while attending college in 2012, AR at 52, 539, for which Plaintiff commenced treatment with Dr. Frost on February 25, 2013.  AR at 616-67.  From January 5 – 8, 2014, Plaintiff was admitted to Women's and Children's Hospital for generalized tonic-clonic seizures (grand mal seizure with loss of consciousness and violent muscle contractions), and was diagnosed with juvenile myoclonic epilepsy.  AR at 539-59.  Plaintiff continued to receive treatment for her seizures from Dr. Frost until 2016 when a disagreement over medication caused Plaintiff to stop seeing Dr. Frost after which she received treatment for her seizures at Brain & Spine Medical Services, PLLC ("Brain & Spine Center") where she saw neurologist Michael Giglio, M.D. ("Dr. Giglio") who diagnosed low back pain, seizures, myalgia, cervicalgia, pain in thoracic spine, and migraines.  AR at 680-95.  At Dent, Plaintiff also saw psychiatrist Alfred Belen, III, M.D. ("Dr. Belen") for anxiety and depression, and continued to see Dr. Belen after she stopped seeing Dr.

Frost.  AR at   Plaintiff received primary medical care at General Physician, PC, where her primary care physician is James J. Panzarella, DO ("Dr. Panzarella").  AR at 2073-2188.  Plaintiff has a history of cervical cancer which she does not allege as contributing to her claimed inability to work.  AR at 2074.

## DISCUSSION

**1.     Standard and Scope of Judicial Review**

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A).  A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error.  42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003).  In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted).  "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id*.  It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory

7

evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence. *Id*. "Congress has instructed . . . that the factual findings of the Secretary,[6] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

In short, the issue is not whether substantial evidence supports the claimant's argument, but "whether substantial evidence supports *the ALJ's decision*." *Bonet ex rel. T.B. v. Colvin*, 523 Fed.Appx. 58, 59 (2d Cir. 2013) (italics in original). "Under this 'very deferential standard of review,' 'once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*.'" *Id*. at 58-59 (quoting *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (italics in original).

## 2. Disability Determination

The definition of "disabled" is the same for purposes of receiving SSDI and SSI benefits. *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a). The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits. 20 C.F.R. §§ 404.1520 and 416.920. *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982). The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which the benefits are claimed. 20 C.F.R. §§ 404.1520(b) and 416.920(b). The second step is whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work

---

[6] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

activities, as defined in the relevant regulations.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement of at least 12 continuous months, there is a presumption of inability to perform substantial gainful activity, and the claimant is deemed disabled, regardless of age, education, or work experience.  42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d).  As a fourth step, however, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" or "RFC" which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20 C.F.R. §§ 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW").  20 C.F.R. §§ 404.1520(e) and 416.920(e).  If the applicant remains capable of performing PRW, disability benefits will be denied, *id*., but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy."  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c).  The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step.  20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).  All five steps need not be addressed because if the claimant fails to meet the criteria at either of the first

two steps, the inquiry ceases and the claimant is not eligible for disability benefits, but if the claimant meets the criteria for the third or fourth step, the inquiry ceases with the claimant eligible for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.

### 3. Analysis of Plaintiff's Arguments

In the instant case, the ALJ found Plaintiff meets the insured status requirements for SSDI though June 30, 2017, AR at 23, and although Plaintiff has worked after her alleged disability onset date ("DOD") of October 29, 2013, her earnings from such work did not rise to the level of substantial gainful activity ("SGA").  *Id*.  The ALJ found Plaintiff suffers from the severe impairment of a seizure disorder, *id*., and also has medically determinable physical impairments of degenerative disc disease, osteopenia, generalized anxiety disorder, and opioid dependence disorder, AR at 23-24, but that such impairments do not cause more than a minimal limitation of Plaintiff's ability to perform basic work activities and are therefore non-severe.  *Id*. at 23-25.  Plaintiff does not have an impairment or combination of impairments meeting or medically equal to the severity of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id*. at 25-26.  Despite her impairments, the ALJ found Plaintiff retains the RFC to perform a full range of work at all exertional levels with several nonexertional limitations including that Plaintiff "cannot work at unprotected heights, or around dangerous tools, machines, or chemicals; cannot use ladders, ropes, or scaffolds; and cannot use stairs more than occasionally."  *Id*. at 26-29.  The ALJ further found Plaintiff remains capable of performing her past relevant work as a collections clerk, as well as other jobs existing in significant numbers in the national economy including dining room attendant, linen room attendant, and fitting room attendant.  *Id*. at 29-30.  Accordingly, the ALJ found Plaintiff

was not disabled as defined in the Act from October 29, 2013, through the date of the ALJ's Decision. *Id*. at 30.

In support of her motion, Plaintiff argues that the ALJ's forumulation of Plaintiff's RFC at the fourth step of the sequential analysis is unsupported because the administrative record lacks any useful assessment by a medical source warranting remand. Plaintiff's Memorandum at 11-13. Plaintiff further argues the ALJ failed to consider her mental impairment in formulating the RFC. *Id*. at 13-14. In opposition, Defendant argues that even without a medical source opinion, the ALJ properly determined Plaintiff's RFC. Defendant's Memorandum at 9-15. In the instant case, the ALJ did not commit legal error in formulating Plaintiff's RFC determination which the ALJ sufficiently connected to substantial evidence in the record to support the RFC determination.

Plaintiff bears the burden of establishing her RFC is more restrictive than the ALJ's determination. *See Smith v. Berryhill*, 740 Fed.Appx. 721, 726 (2d Cir. 2018) (denying remand where the plaintiff failed to meet his burden to prove a more restrictive RFC than assessed by the ALJ) (citing 42 U.S.C § 423(d)(5)); *Michael P. v. Comm'r of Soc. Sec.*, 2023 WL 21228, at * 7 (W.D.N.Y. Jan. 3, 2023) (declining to remand and granting the commissioner's motion for judgment on the pleadings where the plaintiff presented no evidence of functional limitations greater than those found by the ALJ). An ALJ is not required to formulate an RFC that perfectly corresponds to a medical opinion in the record; rather, because the RFC is an administrative finding, the ALJ is permitted to "consider[ ] the medical and other evidence in the record in its totality to reach an RFC determination." *Curry v. Comm'r of Soc. Sec.*, 855 Fed.Appx. 46, 48 n. 3

(2d Cir. 2021) (citing 20 C.F.R. §§ 419.927(c)(3), and 416.945(a)).  The Second Circuit "does not always treat the absence of a medical source statement from claimant's treating physicians as fatal to the ALJ's [disability] determination."  *Swiantek v. Comm'r of Soc. Sec.*, 588 Fed.Appx. 82, 84 (2d Cir. 2015) (citing *Tankisi v. Comm'r of Soc. Sec.*, 521 Fed.Appx. 29, 33-34 (2d Cir. 2013) (absence of a medical source statement is not fatal to the ALJ's RFC formulation where "the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity.").  Further, "a medical source statement is valuable in that it affords a physician the opportunity to explicitly assess a claimant's limitations and RFC, which are necessary components of a fully developed record, but an ALJ need not always obtain one," including where a medical source's treatment "notes contain a comprehensive assessment of a claimant's RFC."  *Reginald R. v. Comm'r of Soc. Sec.*, 2023 WL 5608869, at * 10 (W.D.N.Y. Aug. 30, 2023).  In the context of determining whether a claimant for disability benefits is disabled within the meaning of the Act, where an ALJ's analysis regarding a claimant's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence such that additional analysis would be unnecessary or superfluous, remand is not necessary merely because an explicit function-by-function analysis was not performed.  *Cichocki v. Astrue*, 729 F.3d 172, 177-78 (2d Cir. 2013).  In short, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim."  *Rosa v. Callahan,* 168 F.3d 72, 79 n. 5 (2d Cir. 1999 (quoting *Perez v. Chater,* 77 F.3d 41, 48 (2d Cir.1996)).

In the instant case, the ALJ based his findings and Plaintiff's RFC assessment on the extensive medical record that is without any obvious gaps that would require remand. *Swiantek*, 588 Fed.Appx. at 84. Plaintiff's medical records include, *inter alia*, treatment notes and reports from neurologist Dr. Frost and psychiatrist Dr. Belen, both at Dent, AR at 590-607, 608-67, 698-732, 1267-77, 1954-2055, neurologist Dr. Giglio, AR at 679-95, 1238-66, 3085-3108, pain management specialist Dr. Vullo, AR at 1079-1110, 1281-97, 1701-68, primary care physicians, AR at 733-1038, 1777-1953, 2073-2188, as well as from Horizon Health where Plaintiff received treatment for chemical dependency specifically, opioid pain medications prescribed following a motor vehicle accident, AR at 1385-1450, 2236-3084. The ALJ referenced many of these records in formulating Plaintiff's RFC.

In particular, the ALJ cited a plethora of medical evidence regarding Plaintiff's seizure disorder, including treatment notes covering the period commencing February 25, 2013 through the date of the ALJ's Second Decision. The evidence considered by the ALJ included CT scans of Plaintiff's head and brain taken June 24, 2015, which showed no evidence for an acute intracranial process, and on April 4, 2016 which was unremarkable. AR at 27 (citing AR at 1720-21, 1076-77). The ALJ observed that an abnormal EEG taken on March 18, 2013, showing intermittent background slowing, was attributed to medications Plaintiff was taking which at that time included hydrocodone (opioid pain reliever) and Lamictal (anti-epileptic/anticonvulsant). AR at 27 (citing AR at 2038 and 2055). An MRI of Plaintiff's head and brain taken March 18, 2013 was normal. AR at 27 (citing AR at 1460).

13

The ALJ also considered treatment notes from Plaintiff's numerous medical examinations that showed Plaintiff's seizures were well-controlled when Plaintiff was consistent with her medication.  AR at 27 (citing AR at 1713 (Dr. Vullo reporting on March 16, 2015 that for the past six months, Plaintiff had "good seizure control" with Keppra (antiseizure medication)); AR at 1258 (Dr. Giglio reporting on November 17, 2016, that Plaintiff "has been 4 months seizure free" with "much less [*sic*] migraines"); The ALJ commented that instances of Plaintiff's "breakthrough seizures," *i.e.*, occurring after a seizure-free period, were attributed to noncompliance with medication, *id*. (citing AR at 1239 (Dr. Giglio reporting Plaintiff was discharged from Dent for non-compliance with Keppra dosage which Plaintiff believed increased her seizures) and AR at 626 (neurologic re-evaluation dated June 24, 2013 noting Plaintiff had not experienced any seizures for six months, but had a "spell" on June 6, 2013 after not taking her antiseizure medication for a couple of days), and noted that upon admission to Buffalo General Medical Center on February 1, 2017, Plaintiff had been "seizure-free for five months while taking Vimprat [antiseizure medication] but presented to the ER with recurrent seizures after stopping the medication without her doctor's knowledge."  *Id*. (citing AR at 1209).

Other evidence the ALJ considered as showing Plaintiff's seizures were largely controlled with medication includes treating neurologist Dr. Giglio's report dated August 17, 2017 that Plaintiff "acknowledged she 'feels great comparatively' after going through detoxification for opioids and benzodiazepines," AR at 27 (quoting AR at 2120), "'that things are going really good with seizures and her life,'" *id*. (quoting AR at 2121), "and that she 'had no seizures, and no spells.'"  *Id*. (quoting AR at 2121).  As the ALJ

observed, Dr. Giglio "concluded the claimant's 'larger spells" were controlled with medication and that she was three months away from any type of spell,'" and that Plaintiff "expressed her wish to drive again someday." *Id*. (quoting and citing AR at 2122). On November 1, 2018, Dr. Giglio reported Plaintiff had not had any seizure activity since her previous appointment which the ALJ noticed was eight months earlier, that Plaintiff reported "doing great" with "no complaints," had resumed driving, and had started exercising. *Id*. (citing AR at 3102-04). The ALJ also observed that Plaintiff's primary care provider reported on November 11, 2018, that Plaintiff's seizure disorder was "stable." AR at 27 (citing AR at 2080). Dr. Vullo reported on April 13, 2015, that Plaintiff could ride her bicycle to appointments, AR at 28 (citing AR at 1715), on May 11, 2015, that Plaintif was encouraged to ride her bicycle and walk for exercise while awaiting reinstatement of her driver's license, *id*. (citing AR at 1716), and on June 8, 2015, that Plaintiff had been cleared by the DMV[7] to resume driving, but had been unable to do so because she did not have insurance, and that Plaintiff was doing leg lifts and squats at home. *Id*. (citing AR at 1717).

      The ALJ's determination that Plaintiff retains the residual functional capacity to perform work at all exertional levels is consistent with repeated medical examination notes by neurologists Drs. Frost and Giglio, as well as by Plaintiff's primary care provider that Plaintiff had normal gait and station, reflexes, and sensations throughout her arms and legs, as well as full muscle strength. *See*, *e.g.*, AR at 1790 (Dr. Giglio's May 12, 2018 treatment notes), 1990-91 (Dr. Frost's January 8, 2015 treatment notes),

---

[7] New York State Department of Motor Vehicles.

1784-86 (Dr. Panzarella's April 19, 2016 annual physical report).  Plaintiff points to no evidence to the contrary.

The ALJ also observed that Plaintiff's assertions that she was unable to work was inconsistent with reports from her various treatment providers.  AR at 28.  Specifically, at the second administrative hearing on December 4, 2019, Plaintiff testified that she had not worked since 2013 because of her seizure disorder, adding that her "neurologist is very strict.  I have to be six-months seizure-free with no spells, no grand mal seizures in order to be able to work," AR at 92, asserting that the neurologist most recently made this comment at Plaintiff's appointment at "the end of May," 2017.  *Id*.  In contrast, Dr. Giglo reported he supported Plaintiff returning to work on numerous occasions, including on November 1, 2017 (AR at 3093), December 16, 2017 (AR at 3096-97), November 1, 2018 (AR at 3104).  As early as November 1, 2013, Plaintiff's then treating neurologist Dr. Frost commented that although Plaintiff was then restricted from driving, there was no reason Plaintiff could not continue working as a paralegal.  AR at 28 (citing AR at 2032).  On January 8, 2015, Dr. Frost reported that Plaintiff reported she was unable to work because her employer believed Plaintiff posed a liability should she fall, AR at 28 (citing AR at 887), although Dr. Frost maintained Plaintiff would be safe working in either an office setting or from home.  *Id*. (citing AR at 880).

Insofar as Plaintiff maintains the ALJ failed, in formulating Plaintiff's RFC, to consider her mental impairment, Plaintiff's Memorandum at 13-14, the ALJ, relying on treating psychiatrist Dr. Belen's treatment reports, found Plaintiff's mental impairment did not meet either the so-called "paragraph B" or "paragraph C" criteria set forth in the

16

relevant regulations for evaluating mental disorders, *i.e.*, 20 C.F.R. Part 404, Subpt. P App. 1, §§ 12.04 (depressive, bipolar and related disorders) and 12.06 (anxiety and obsessive-compulsive disorders); rather, the ALJ found Plaintiff had, as most, a mild anxiety impairment.  This determination is consistent with Dr. Belen's repeated assessment that Plaintiff's mental status examination findings regarding Plaintiff's anxiety were largely unremarkable.  *See*, *e.g.*, AR at 591-94 (July 31, 2014), 1274-1278 (June 16, 2016).  This is also consistent with Dr. Panzarella's report on April 19, 2016, that Plaintiff had only a single episode of major depressive disorder, and Plaintiff's anxiety disorder was stable with medication.  AR at 1786.  Thus, the ALJ's determination that Plaintiff's mental impairment was not a severe impairment is supported by substantial evidence in the record.  Moreover, the ALJ properly considered Plaintiff's mental impairment in combination with her seizure disorder, as required in formulating Plaintiff's RFC.  *See McIntyre v. Colvin*, 758 F.3d 146, 151- 52 (2d Cir. 2014) ("'the combined effect of a claimant's impairments must be considered in determining disability; the [Commissioner] must evaluate their combined impact on a claimant's ability to work, regardless of whether every impairment is severe.'" (quoting *Dixon v. Shalala*, 54 F.3d 1019, 1031 (2d Cir. 1995))).

To summarize, in the instant case, despite the absence of a medical source statement and function-by-function assessment of Plaintiff's ability to perform work-related activity, the ALJ's RFC assessment is supported by substantial evidence in the record, and Plaintiff has not sustained her burden of establishing that no reasonable factfinder could have reached the same conclusion as the ALJ based on the evidence of record.  *See Henderson v. Comm'r of Soc. Sec.*, 2019 WL 3237343, at ** 7-8 (W.D.N.Y.

July 18, 2019) (sustaining the ALJ's materiality finding where the plaintiff "has not shown that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence of record." (citing *Brault*, 683 F.3d at 448)).  Accordingly, the ALJ's determination that Plaintiff could perform work at all exertional levels subject only to a few non-exertional limitations related to Plaintiff's seizure disorder is supported by substantial evidence in the record.

## CONCLUSION

Based on the foregoing, Plaintiff's Motion (Dkt. 12) is DENIED; Defendant's Motion (Dkt. 13) is GRANTED.  The Clerk of Court is DIRECTED to close the file.  SO ORDERED.

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:  January 24, 2024
    Buffalo, New York